**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KENNETH KEEL, | NO. 1:99-cv-06720-AWI-SMS-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATION RE DEFENDANTS' MOTION TO DISMISS |
| v. | |
| RICHARD EARLY, et al., | |
| Defendants. | (Doc. 92) |

Plaintiff is a state prisoner proceeding pro se.  Plaintiff seeks relief pursuant to 42 U.S.C. § 1983.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.   Pending before the court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b).  Defendant moves to dismiss this action on the ground that Plaintiff failed to exhaust his available administrative remedies prior to filing suit.  Plaintiff has opposed the motion.

I.    **Background**

This action proceeds on  the first amended complaint[1].   Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR)  at Folsom State Prison, brings this civil rights action against defendant correctional officials employed by the CDCR at North Kern State Prison (one defendant is employed at Soledad State Prison).  Plaintiff

---

[1] This action was dismissed for failure to prosecute.  On August 18, 2008, Plaintiff's motion for reconsideration was granted, re-opening this case.

names the following individual defendants:  Richard Early, Warden at NKSP; Associate Warden

Sue Torbik; Linda Melching, Chief of Inmate Appeals; Sergeant R. Ysalva; Correctional Officer

(C/O) J. A. Brown; Appeals Coordinator Jess Flores; Chief Medical Officer Robert Mekemson;

Medical Technical Assistant (MTA) Jody DiGiovanna; Registered Nurse Paz-Gelacia; Sgt. Rick

Fields; MTA Carroll Edgar (employed at Soledad); C/O Steve Padilla; C.O F. Grajeda; Sgt. Perry

Rich.[2]

### A.    Plaintiff's First Amended Complaint

Plaintiff arrived at NKSP on December 17, 1998. (Am. Compl., ¶ 1.)  Upon his arrival,

Plaintiff was wearing a neck brace which was prescribed at the Los Angeles County Jail.   During

his pretrial detention, Plaintiff was undergoing treatment for a spinal injury and high blood

pressure. (Am. Compl. ¶ 2.)   Plaintiff requested a push-cart from defendant Ysalva, in order to

help him relocate his property.   (Am. Compl. ¶ 3.)   Ysalva denied Plaintiff's request, "and

refused to reasonably accommodate Plaintiff's disability." (Am. Compl. ¶ 4.)   Plaintiff alleges

that this exacerbated a pre-existing injury, causing him to suffer pain. (Am. Compl. ¶ 5.)  Ysalva

ordered Plaintiff to remove his neck brace and back brace and give them to Brown. (Am. Compl.

¶ 6.)  Brown confiscated Plaintiff's orthopedic braces. (Am. Compl. ¶ 7.)  Plaintiff's pre-

existing spinal injury worsened in the following days. (Am. Compl. ¶ 8.)

### B.    Defendant's Motion To Dismiss

Defendant moves to dismiss this action on the ground that Plaintiff has failed to exhaust

his available administrative remedies prior to filing suit.   The Civil Rights Act under which this

action was filed provides:

> Every person who, under color of [state law]   . . . subjects, or

---

[2] On July 30, 2009, an order was entered the by District Court, adopting the findings and
recommendations of the Magistrate Judge and dismissing Defendants Early, Torbik, Melching,
Brown, Flores, Mekemson, DiGiovanna, Paz-Gelacia, Fields, Edgar, Padilla and Rich.
Plaintiff's claims regarding the prison grievance process and retaliation were dismissed.
Defendants Ysalva and Grajeda filed an answer to the first amended complaint.  On January 20,
2010, a stipulation of dismissal was entered, dismissing Defendant Grajeda.   This action
proceeds against Defendant Ysalva on Plaintiff's Eighth Amendment claim.

> causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution. . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"The Prison Litigation Reform Act requires that a prisoner exhaust available administrative remedies before bringing a federal action concerning prison conditions." Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009)(citing 42 U.S.C.§ 1997e(a)). "[T]he PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). This means that a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009)(quoting Ngo, 548 U.S. at 88).

In California, there are four levels of review - informal level, first formal level, second formal level, and third formal level. The third formal level constitutes the Director's decision on appeal. Cal. Code Regs. Tit. 15, § 3084.5(e)(2). For an appeal that is a request for accommodation, however, there is no formal level of review. Id. at 3085. An inmate must proceed to the director's level prior to filing suit. Booth v. Churner, 532 U.S. 731, 738 (2001).

A failure to exhaust administrative remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated 12(b) motion rather than a motion for summary judgment. Wyatt v. Terhune, 315 F.3rd 1108 (9th Cir. 2003)(Wyatt III).[3] Pursuant to Wyatt, lack of exhaustion is an affirmative defense subject to dismissal, not a challenge to the merits of the action. A successful challenge to plaintiff's failure to exhaust, therefore, subjects the complaint to dismissal via an unenumerated 12(b) motion. In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-1120. If the court concludes that a plaintiff has not exhausted

---

[3] Wyatt III supercedes Wyatt v. Terhune, 305 F.3d 1033 (9th Cir. 2002)(Wyatt II) and Wyatt v. Terhune, 280 F.3d 1238 (9th Cir. 2002)(Wyatt I).

his administrative remedies, the proper remedy is dismissal of the claims without prejudice.  Id.

Defendant supports his motion with the declaration of P. Biggs, Appeals Coordinator at North Kern State Prison, and exhibits A-C attached thereto.   Biggs declares that

> when an inmate submits an appeal (including when the appeal is a request for accommodation), a record is made of that appeal in the computerized inmate/parolee appeals tracking system.  This record will include information such as the date the appeal was received at each level of appeal, when a response is due, when the response is completed, and the disposition of the appeal.  The inmate/parolee appeals tracking system also includes a very brief statement concerning the issue of the appeal.  When the appeal concerns the inmate's medical care, for instance, the issue will be 'medical.'  When the appeal concerns a request for modification, the issue will be 'ADA.'

> I have reviewed the inmate appeal file and the inmate/parolee appeals tracking system records for inmate Kenneth Keel (CDC #D-12127).  These records show that Keel submitted only one inmate appeal at NKSP that was appealed through the third formal level of review and therefore exhausted.  This appeal was log no. NKSP-A-99-00505.  It was received at the first level of formal review on May 27, 1999, and concerned medical issues.  According to the records, no other inmate appeal submitted by Keel at NKSP was exhausted.

> Attached hereto as Exhibit 'A' is a true and correct copy of the printout of Keel's records from the inmate/parolee appeals tracking system.  These records were made and kept in the ordinary course of my employment with the CDCR.

> Because of the age of Keel's inmate appeal log no. NKSP-A-99-00505, the prison no longer has a copy of the appeal or the responses to it.  However, it is my understanding that Keel attached to his initial complaint in this action a document purporting to be a copy of inmate appeal log no. NKSP-A-99-00505 along with some of the responses to it.  According to this document, the appeal concerned Keel's complaint that time limits were not complied with on a reasonable modification or accommodation request, that the reasonable modification or accommodation request was improperly rejected, and the prison's alarm policy.

> Attached hereto as Exhibit 'B' is what appears to be a true and correct copy of Keel's inmate appeal log no. NKSP-A-99-00505 along with responses to it.

> The document purporting to be Keel's inmate appeal log no.

4

NKSP-A-99-00505 that Keel attached to his complaint makes reference to an earlier reasonable modification or accommodation request dated March 2, 1999.  My review of Keel's inmate appeal file and the inmate/parolee appeals tracking system records show that an accommodation request (log no. NKSP-A-99-00233) was received on March 2, 1999.  A decision was rendered at the first formal level of review and, therefore, this accommodation request was not exhausted.

Because of the age of Keel's accommodation request, long no. NKSP-A-99-00233, the prison no longer has a copy of the request or responses to it.  However, it is my understanding that Keel attached to his first amended complaint in this action a document purporting to be a copy of this accommodation request, log no. NKSP-A-99-00233, along with responses to it.

(Biggs Decl., ¶¶ 4-11.)

## II.   Discussion

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense in which a defendant has the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119.  Defendant's exhibits indicate that Plaintiff filed two grievances regarding the conduct at issue in this lawsuit.  Grievance number NKSP-A-99-00505, attached as Defendant's Exhibit B to the declaration of P. Biggs, was filed by Plaintiff on May 7, 1999.  The grievance concerns the policy and practice of NKSP to require all Facility "A" residents to immediately lay on the ground when ever an alarm sounds, whether or not they have a restricted medical condition.   Plaintiff specifically indicated that his preexisting spinal injury was exacerbated while complying with the alarm policy on April 28, 1999.  The conduct at issue in this lawsuit involves the denial of Plaintiff's request for a pushcart to transport his property. There are no allegations naming Defendant Ysalva regarding North Kern State Prison's alarm policy.   The appeal was partially granted at the second level of review by the Warden, who noted three appeal issues: time limits regarding Reasonable Modification or Accommodation Requests (CDC form 824); improper rejection of CDC form 824; the alarm policy on Facility A.  Warden Early ruled that, as to the third issue, "It is North Kern State Prison's policy to make every reasonable effort to accommodate persons who met the criteria for the Americans With

5

1  Disabilities Act.  After careful consideration, your appeal has been partially granted at the second

2  level of review."  Though Biggs declares that this appeal was exhausted at the third level, it

3  clearly did not address the conduct at issue in this lawsuit.  There is nothing in grievance number

4  NKSP-A-99-00505 that refers to a request by Plaintiff for a pushcart, or Yslava denying such a

5  request.  There is nothing that refers to the removal of orthopedic braces.

6  　　　　"Compliance with grievance procedures . . .is all that is required by the PLRA to

7  'properly exhaust.'  The level of detail necessary in a grievance to comply with the grievance

8  procedures will vary from system to system and claim to claim, but it is the prison's

9  requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Jones v.

10  Bock, 549 U.S. 199, 218 (2007).  Where a prison's grievance process does not specifically

11  require a prisoner to identify offending prison staff in an inmate appeal, the failure to do so will

12  not be seen as a per se failure to exhaust a claim against a defendant who was not named in the

13  prison grievance process.  Jones, 549 U.S. at 200-201.  Further, "if prison regulations do not

14  prescribe any particular content for inmate grievances, 'a grievance suffices if it alerts the prison

15  to the nature of the wrong for which redress is sought."  Johnson v. Testman, 380 F.3d 691 (2nd

16  Cir. 2004) quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002).  The Ninth Circuit held

17  that Strong set the appropriate standards for prisoner grievances to meet so as to sufficiently

18  notify prison personnel of a problem for exhaustion purposes.  Griffin v. Arpaio, 557 F.3d 1117,

19  1120 (9th Cir. 2009)..

20  　　　　In grievance number NKSP-A-99-00505, Plaintiff clearly articulates his concern with the

21  alarm policy.  Though he suffered from the same injury as in this lawsuit, an exacerbated spine

22  injury, he does not "alert the prison to the nature of the wrong."  The crux of Plaintiff's

23  complaint regarding Defendant Ysalva is the denial of Plaintiff's request for a pushcart and the

24  order to remove his neck brace.  Nothing in this appeal puts prison officials on notice of those

25  issues.

26  　　　　Exhibit C to the declaration of P. Biggs is a copy of a Reasonable Modification or

27

28  　　　　　　　　　　　　　　　　　　　6

Accommodation Request (CDC Form 1824) submitted by Plaintiff in March of 1999.  This request was assigned number NKSP-A-99-00233.   Plaintiff's grievance, in its entirety, follows.

> When ever there is an 'alarm, gunshot or whistle,' all inmates must 'immediately lay flat on the ground, face down with arms spread out until told to get up."  Due to my traumatic spinal injuries, this is extremely painful and difficult for me to do.  For that reason, I have serious mental distress when I'm out of my cell for meals, showers, religious activities, et."

(Biggs. Decl., ex. C).   The accommodation Plaintiff sought was a color coded vest or jacket, along with training of correctional personnel.  Biggs declares that there was a response at the first level of review.  He was unable to locate any record of any response at the third and final level of review.

Defendant has come forward with evidence that Plaintiff did not exhaust his grievance regarding Defendant Ysalva's conduct at the third and final level of review.  Further, the conduct at issue in grievance number NKSP-A-99-00233 is similar to that in grievance number NKSP-A-99-00505.  Though not required to name Defendant Ysalva, Plaintiff must, as he fails to do so here, put prison officials on notice of the offending conduct.  There is no indication in this grievance that Plaintiff was denied a pushcart to move his personal property, or that he was ordered to remove his neck brace.  Therefore, the Court finds that Defendant has come forward with evidence that Plaintiff has failed to exhaust his available administrative remedies prior to filing suit.

In his opposition, Plaintiff argues that he has exhausted the administrative remedies that were available regarding the conduct at issue.[4] Plaintiff contends that on December 26, 1998, he submitted a CDC 602 to Defendant Ysalva regarding the confiscation of orthopedic braces, "to no avail."  Plaintiff contends that Ysalva "failed and refused to respond to Plaintiff's appeal."  Plaintiff refers to an emergency appeal submitted on January 10, 1999, which addressed the issue regarding orthopedic braces.  Plaintiff refers to paragraph 26 of his amended complaint,

---

[4]Plaintiff's opposition to the motion to dismiss is not made under the penalty of perjury.

paragraph 58 of the original complaint and Exhibit E to the original complaint.  Paragraph 58 of the original (unverified) complaint, indicates that on February 24, 1999, Plaintiff was interviewed by Senior Medical Technical Assistant (MTA) Edgar regarding an emergency appeal submitted by Plaintiff on January 10, 1999.  The emergency appeal concerned "arbitrary confiscation of orthopedic braces."  Edgar denied the appeal without addressing the merits.  (Compl. ¶ 58.)

In paragraph 26 of the amended complaint, Plaintiff alleges that his emergency appeal regarding the denial of his orthopedic braces was granted at the first level of review, "thereby exhausting available administrative remedies according to Flores, the NKSP Appeals Coordinator."  (Am. Compl. ¶ 26.)

Exhibit E to the original complaint is a copy of inmate grievance form 602 filed by Plaintiff.  The grievance was assigned number NKSP-B-99-0054.   The grievance referred to "the arbitrary confiscation of orthopedic braces on December 17, 1998."   The appeal was granted at the first level, but there is no indication of what relief, if any, Plaintiff was awarded.[5]

Just below the approval line for the first level of review, Plaintiff is advised of the following option: "If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response."  The first level response was approved by the Division Head on March 1, 1999.  On March 16, 1999, Plaintiff indicated the following dissatisfaction: "appellant request compensatory damages in the sum of $50,000.  As a direct result of this incident, appellant has suffered and continues to suffer pain and physical disability."

Also included in Exhibit E is a copy of an Inmate/Parolee Appeals Screening Form,

---

[5] The Court has reviewed Exhibits A through Z attached to the original complaint.  These exhibits consist of numerous grievances filed throughout the spring of 1999.  These grievances relate mostly to Plaintiff's medical care, and include numerous emergency appeals and "screen out" forms indicating that Plaintiff has filed duplicative appeals.  Plaintiff's Exhibit K is a copy of inmate grievance number 99-00108.  Exhibit K also includes a memo from the Inmate Appeals Office dated March 17, 1999, regarding grievance NKSP-B-99-00108.  The memo indicates that the appeal issue is "medical" and that the appeal has been sent to staff for first level review.  The Court notes that the appeal was received on December 1, 1999, and the conduct at issue in this lawsuit occurred on December 17, 1999.

indicating that an appeal has been returned to Plaintiff.   A box is checked on the form, indicating

that Plaintiff's grievance was granted at the first level of review.   Under the box labeled "other,"

Plaintiff is advised that "if you have other issues you must appeal on a separate appeal form."

This form is signed on April 8, 1999.  There is no indication on the form what appeal the

screening form refers to.

Though Plaintiff contends that he attempted to submit an inmate grievance but was

stymied by Defendant Ysalva, his own exhibits contradict the unverified allegations in the

complaint, amended complaint and opposition.   Exhibit E to the complaint clearly indicates that

Plaintiff filed an inmate grievance regarding the confiscation of his orthopedic braces and that the

appeal was reviewed at the first level.  Exhibit E clearly indicates that Plaintiff was dissatisfied

with this response, and requested review at the second level.  Plaintiff offers no evidence that he

filed his grievance at the final, Director's level of review.[6]

Plaintiff does not allege or argue that he exhausted his administrative remedies at the

Director's level.   His argument is that he was advised by prison authorities that "no further

action is required."  Defendant has submitted evidence that Plaintiff did not file an inmate

grievance concerning the conduct at issue in this lawsuit to the final, Director's, level of review.

Plaintiff argues that he was told that no further review was required.  The motion therefore turns

on whether further relief was reasonably apparent to Plaintiff.

In Marella v. Terhune, 568 F.3d 1024, 1027 (2009), the Ninth Circuit  in remanding for

further factual finding a case in which the prisoner failed to exhaust his administrative remedies,

held that the plaintiff was not required to exhaust further levels of review once he had been

reliably informed by an administrator that no remedies are available.  The Ninth Circuit stated

that "a defendant must demonstrate that pertinent relief remained available" and that "[r]elevant

evidence in so demonstrating would include . . . information provided to the prisoner concerning

---

[6] Pleadings and opposition must be verified to constitute opposing affidavits.  Moran v.
Selig, 447 F.3d 748, 759-60 (9th Cir. 2006).

1    the operation of the grievance procedure . . ."  Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir.

2    2005).  "[I]nformation provided to the prisoner is pertinent because it informs [the]

3    determination of whether relief was, as a practical matter, available."  Id. at 937.  The implication

4    from the Ninth Circuit's language is that relief is not "available" if its existence is not reasonably

5    apparent to the prisoner.

6           In Exhibit E, Plaintiff offers an unauthenticated inmate appeal screening form indicating

7    both that the appeal was granted at the first level of review, and that Plaintiff could further appeal

8    the issue if he was dissatisfied.  Plaintiff was specifically advised that "if you have other issues

9    you must appeal on a separate form."  Plaintiff indicates that this screening form advised him that

10   no further relief was available.

11          Defendant argues that the appeal screening form is unauthenticated, and does not include

12   any indication that it refers to the inmate grievance in Exhibit E.  Defendant does not raise the

13   issue of authentication in his opposition.  It is asserted for the first time in the reply.   Because

14   Plaintiff has not verified any of his pleadings, they can not be considered affidavits for purposes

15   of this motion.  Moran, 447 F.3d at 459-60.  However, whether the inmate screening form

16   attached as Exhibit E relates to grievance number NKSP-B-99-00054 and whether it is within

17   Plaintiff's personal knowledge is an open evidentiary question at this point in the litigation.  The

18   Ninth Circuit has held that even declarations that do contain hearsay are admissible for summary

19   judgment purposes because they "could be presented in an admissible form at trial."  Fonseca v.

20   Sysco Food Services of Arizona, Inc., 374 F.3d 840, 846 (9th Cir. 2004) citing Fraser v. Goodale,

21   342 F.3d 1032, 1037 (9th Cir. 2003), cert. denied sub nom. U.S. Bancorp. v. Fraser, 541 U.S. 937

22   (2004); see also Hughes v. Unites States, 953 F.2d 531, 543 (9th Cir. 1992).

23   **III.    Conclusion**

24          The evidence at this point in the litigation does not conclusively establish whether the

25   inmate appeal screening form submitted in Plaintiff's Exhibit E to the complaint refers to inmate

26   grievance number NKSP-B-99-00054.  In deciding a motion to dismiss, the Court construes the

27

28                                                    10

1  facts in the light most favorable to the non-moving party.  Marceau v. Balckfeet Hous. Auth., 540

2  F.3d 916, 919 (9th Cir. 2008).  Because the Court is not conclusively deciding that Plaintiff did

3  in fact exhaust his available administrative remedies, Defendant is not precluded from raising the

4  argument in a motion for summary judgment.[7]  Specifically, the Court finds that Plaintiff did not

5  exhaust his grievance at the Director's level of review.  The Court cannot conclude, based on the

6  exhibits submitted in this motion, whether it was reasonably apparent to Plaintiff that further

7  relief was available after receiving a response at the first level of review.

8      Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion to dismiss for

9  failure to exhaust available administrative remedies pursuant to Federal Rule of Civil Procedure

10  12(b) be denied.

11      These findings and recommendations are submitted to the United States District Judge

12  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty days

13  after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16  shall be served and filed within ten days after service of the objections.   The parties are advised

17  that failure to file objections within the specified time waives all objections to the judge's

18  findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file

19  objections within the specified time may waive the right to appeal the District Court's order.

20  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21

22  IT IS SO ORDERED.

23  **Dated:    June 29, 2010**                          **/s/ Sandra M. Snyder**
                                                  UNITED STATES MAGISTRATE JUDGE

24

25  _____

26      [7]Plaintiff is reminded of the evidentiary requirements for opposing a motion for summary
   judgment set out in the second informational order of July 2, 2009.

27

28                                               11