# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

KENNETH G. KEEL,

                Plaintiff,

    v.

RICHARD EARLY, et al.,

                Defendants.

_____/

CASE NO. 1:99-cv-06720-AWI-SMS PC

FINDINGS AND RECOMMENDATIONS RECOMMENDING MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT YSLAVA BE GRANTED

(Doc. 103)

OBJECTIONS DUE WITHIN THIRTY DAYS

## FINDINGS and RECOMMENDATIONS

### I.    Procedural History

Plaintiff Kenneth G. Keel (hereinafter "Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Amended Complaint on October 11, 2001.  (Doc. 64.)  The Court screened the Amended Complaint pursuant to 28 U.S.C. § 1915A and found that it stated a cognizable claim for relief under 42 U.S.C. § 1983 against Defendants Yslava and Grajeda.  (Doc. 73.)  The parties stipulated to dismissal of Defendant Grajeda with prejudice on January 20, 2010 (Doc. 96) such that the case is currently proceeding only against Defendant Yslava.  On August 11, 2010, Defendant Yslava (hereinafter "Defendant") filed a motion for summary judgment as to Plaintiff's claims against him.  (Doc. 103.)  Plaintiff requested and received extensions of time to file an opposition (Docs. 105, 106, 112, 113), and which he complied with on October 8, 2010

1  (Docs. 108, 109, 110, 111).[1]  Defendant filed a reply on October 5, 2010.  (Doc. 107.)  The

2  motion is deemed submitted.

3      For the reasons discussed herein below, Defendant is entitled to summary judgment on

4  Plaintiff's claim(s) such that his motion should be granted in its entirety.

5  **II.    Summary Judgment Standard**

6      Summary judgment is appropriate when it is demonstrated that there exists no genuine

7  issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

8  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

9          always bears the initial responsibility of informing the district court
10         of the basis for its motion, and identifying those portions of "the
           pleadings, depositions, answers to interrogatories, and admissions
           on file, together with the affidavits, if any," which it believes
11         demonstrate the absence of a genuine issue of material fact.

12  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

13  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

14  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

15  file.'"  *Id*.  Indeed, summary judgment should be entered, after adequate time for discovery and

16  upon motion, against a party who fails to make a showing sufficient to establish the existence of

17  an element essential to that party's case, and on which that party will bear the burden of proof at

18  trial.  *Id.* at 322.  "[A] complete failure of proof concerning an essential element of the

19  nonmoving party's case necessarily renders all other facts immaterial."  *Id*.  In such a

20  circumstance, summary judgment should be granted, "so long as whatever is before the district

21  court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

22  satisfied."  *Id.* at 323.

23      If the moving party meets its initial responsibility, the burden then shifts to the opposing

24  party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec.*

25

26

27  _____

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on July 2, 2009.  *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

28

1   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the

2   existence of this factual dispute, the opposing party may not rely upon the denials of its

3   pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

4   admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P.

5   56(e); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

6   contention is material, i.e., a fact that might affect the outcome of the suit under the governing

7   law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific*

8   *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,

9   the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool*

10  *v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

11          The parties bear the burden of supporting their motions and oppositions with the papers

12  they wish the Court to consider and/or by specifically referencing any other portions of the record

13  they wish the Court to consider.  *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026,

14  1031 (9th Cir. 2001).  The Court will not undertake to mine the record for triable issues of fact.

15  *Id.*

16  **III.    Plaintiff's Claims Against Defendant Yslava**

17          On November 24, 2008 Plaintiff's First Amended Complaint was screened and found to

18  state a cognizable claim against Defendant for violation of Plaintiff's rights under the Eight

19  Amendment[2] based on the allegations that:  Plaintiff arrived at the Receiving and Release (R&R)

20  unit of North Kern State Prison (NKSP) on December 17, 1998; upon his arrival, Plaintiff was

21  wearing a neck brace which had been prescribed for him at the Los Angeles County Jail as part

22  of his treatment for a spinal injury; Plaintiff requested a push-cart from Defendant in order to

23

24          [2] In his opposition, Plaintiff appears to presents arguments regarding possible claims under the Americans
    with Disabilities Act and against Defendant Yslava for failing to properly train, supervise, and direct his subordinates
25  and for failing to respond to his 602 inmate appeal.  Plaintiff may not now expand the scope of this litigation via
    deposition testimony or his opposition to defendants' motion for summary judgment.  *See Gilmore v. Gates,*
26  *McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).  Accordingly, Plaintiff is not allowed to pursue any claims
    against Defendant Yslava for violations of his rights under the ADA, for failing to properly train, supervise, and
27  direct his subordinates, or for failing to respond to his 602 inmate appeal.

28

3

1   help him relocate his property; Defendant denied Plaintiff's request; which allegedly exacerbated

2   a pre-existing injury, causing Plaintiff to suffer pain.  (Doc. 73, Order, 2:7-17.)

3   **IV.   Undisputed Facts[3]**

4         Defendant is a correctional sergeant employed by the California Department of

5   Corrections and Rehabilitation (CDCR).  Defendant has been employed with the CDCR for 21

6   years.  Since 1993, Defendant has been assigned to NKSP, including six years as the Sergeant

7   assigned to R&R.  Defendant held that assignment during December 1998.  R&R is the area at

8   NKSP where new inmates arrived.  These new inmates arrived at NKSP on a large bus that

9   typically carried in excess of 40 inmates and arrived on an often weekly basis.  In 1998, the bus

10  would stop outside the backdoor of R&R.  Once the inmates entered the R&R building, it was

11  the practice that their property would be searched by the officers.  Inmates would be informed of

12  what property they could keep and what property was not permitted.  Inmates were both limited

13  to a certain amount of property and prohibited from possessing property that posed a security

14  risk.

15        When an inmate had either excess property or property that had to be confiscated as a

16  security risk, the inmate had three options.  The inmate could choose to have the property

17  destroyed, the property could be mailed home, or the property could be donated.  Inmates were

18  not provided with carts to carry their property at R&R for a number of reasons.  When the

19  inmates left R&R, they were free to ask other inmates for assistance in carrying their property.

20  For these reasons, when an inmate at R&R made a request of Defendant to use a cart to transport

21  his property, as happened on frequent occasions, it was his custom and habit to deny the request.

22        During the receiving process, inmates were also instructed to remove their clothing to

23  undergo an unclothed body search.  The practice was that removable medical devices, such as

24  back braces, were removed for the purpose of the unclothed body search.  Removal of the

25

26  _____

27       [3]  This is a summary of the facts listed as undisputed by Defendant in his moving papers (Doc. 103-2) which
     Plaintiff admitted in his opposition (Doc. 109).

28

1  devices was essential because they could otherwise be easily used to hide contraband, such as

2  weapons or narcotics.  As with other pieces of property, the medical devices would be inspected

3  by the officers to ensure that they did not contain any contraband or pose any security risk.  The

4  medical staff would ask questions of the inmate to gain information on medical conditions,

5  medications, and medical appliances.  During his time as R&R Sergeant, inmates routinely came

6  to Defendant to protest the confiscation of certain pieces of property.  A determination as to the

7  propriety of that confiscation would be made by Defendant on a case-by-case basis.

8      Plaintiff arrived at NKSP on December 17, 1998.  Defendant has no memory of Plaintiff

9  or of any interaction with him during his arrival at NKSP's R&R.  Defendant also has no

10  recollection of instructing Plaintiff to remove his back and neck braces for the unclothed body

11  search or of Plaintiff complaining to Defendant about the confiscation of these medical

12  appliances.  While being processed into the prison, Plaintiff underwent a screening by medical

13  staff.  During this screening, Plaintiff was asked whether he was then currently under a doctor's

14  care for medical, dental, or psychiatric reasons.

15  **V.    Disputed Facts[4]**

16      Defendant asserts that inmates were not to carry their property into R&R for security

17  reasons, since the property had not yet been searched by prison staff to ensure it did not contain

18  any weapons or other contraband; rather the practice was that the staff assigned to the transport

19  team that delivered the inmates would unload the inmate property from the cargo bays at the

20  bottom of the bus and carry the property into R&R.  (Doc. 103-2, Def. UMF Nos. 8, 9, 30.)

21  Plaintiff counters that, on the day of the incident, arriving inmates carried their own property into

22  R&R.  (Doc. 109, Plntf. DF Nos. 8, 9, 30.)

23      Defendant asserts that the presence of a large number of carts for use by inmates would

24  have presented a safety and security risk to staff and other inmates.  (Doc. 103-2, Def. UMF No.

25

26      [4] This is a summary of the facts listed as undisputed by Defendant in his moving papers (hereinafter "Def.
UMF No. *") (Doc. 103-2) followed by the disputes thereto which Plaintiff raised in his opposition (hereinafter
27  "Plntf. DF No.*") (Doc. 109).

28

1  32.)  Plaintiff counters that there were push carts inside R&R available for use.  (Doc. 109, Plntf.

2  DF No. 32.)

3       Defendant asserts that determinations as to which inmates were provided carts, and

4  competition between inmates for a limited number of carts, could have created conflict and

5  jealousy between inmates.  (Doc. 103-2, Def. UMF No. 33.)  Plaintiff counters that this broad

6  speculation does not negate Defendant's duty to provide reasonable accommodations under the

7  ADA.[5]  (Doc. 109, Plntf. DF No. 33.)

8       Defendant asserts that carts could also potentially be used as weapons to attack staff or

9  other inmates.  (Doc. 103-2, Def. UMF No. 34.)  Plaintiff counters that it is inconceivable that

10 the large plastic push-carts that Plaintiff saw could be used as weapons.  (Doc. 109, Plntf. DF No.

11 34.)

12      Defendant asserts that, as a sergeant, the decision as to whether carts would be present at

13 R&R for the use of inmates in transporting their property was not one that he would have been

14 responsible for making.  (Doc. 103-2, Def. UMF No. 35.)  Plaintiff counters that Defendant has a

15 duty to provide reasonable accommodations under the ADA.[5]  (Doc. 109, Plntf. DF No. 35.)

16      Defendant asserts that he has no memory of whether Plaintiff may have failed to follow

17 the practice at R&R and, instead, attempted to carry his own property into R&R; and that if

18 Plaintiff had approached him and asked for the use of a cart to transport his property, Defendant

19 would have acted consistent with his custom and habit and declined this request since no carts

20 were present at R&R for use by the inmates, the property was to be carried into R&R by the

21 transport team and not the inmate, and because Plaintiff was free to request help from other

22 inmates in moving his property out of R&R.  (Doc. 103-2, Def. UMF Nos. 39, 40.)  Plaintiff

23 counters that if the transport team unloaded the bus and carried the property into R&R as argued

24 by Defendant, Plaintiff would not have had access to his property, especially with all of the

25

26      [5] There are no claims under the ADA remaining in this action.

27

28

6

officers present.  (Doc. 109, Plntf. DF Nos. 39, 40.)

Defendant asserts that many medical devices often contained metal rods that could be turned into weapons.  (Doc. 103-2, Def. UMF No. 19.)  Plaintiff counters that his orthopedic braces did not contain any metal or plastic.  (Doc. 109, Plntf. DF No. 19.)

Defendant asserts that, once removed from an inmate's body, the medical devices were to be given by the officers to the medical staff person at R&R.  (Doc. 103-2, Def. UMF No. 20.)  Plaintiff counters that Defendant did not proffer any documentary evidence to demonstrate that Plaintiff's medically prescribed orthopedic braces were given to medical staff, but to the contrary, medical staff informed Plaintiff that his orthopedic brace was not given to them by the officers.  (Doc. 109, Plntf. DF No. 20.)

Defendant asserts that the medical staff, typically a medical technical assistant (MTA) or a registered nurse (RN), was to make a determination as to whether a given  medical device was medically necessary for the inmate.  (Doc. 103-2, Def. UMF No. 21.)  Plaintiff counters that section 3359(b) of the CCR required Defendant to have a physician, not a MTA or RN, determine whether to confiscate Plaintiff's prescribed orthopedic braces.  (Doc. 109, Plntf. DF No. 21.)

Defendant asserts that the medical staff person would ask questions of the inmate to gain information on medical conditions, medications, and medical appliances.  (Doc. 103-2, Def. UMF No. 23.)  Plaintiff states that because Defendant was not a member of the medical staff, he was not involved in medically screening the new inmates or in determining whether the medical appliances they arrived with were necessary.  (Doc. 109, Plntf. DF No. 23.)

Defendant asserts that when it was a medical device which had been confiscated, it was his custom and habit to leave the decision of the appropriateness of confiscating the device to the medical staff person at R&R.  (Doc. 103-2, Def. UMF No. 28.)  Plaintiff counters that Defendant did not proffer any evidence indicating that a "department physician" made such a decision and that the "bus screening form" submitted by Defendant showed that no medical staff ratified the

1  confiscation of Plaintiff's orthopedic braces by non-medical staff (Doc. 109, Plntf. DF No. 28),

2  but admits that because Defendant was not a member of the medical staff, he was not involved in

3  medically screening the new inmates or in determining whether the medical appliances they

4  arrived with were necessary.  (*Id.*, Plntf. DF No. 23.)

5      Defendant asserts that if Plaintiff had complained to him about of the confiscation of his

6  back and neck braces for the unclothed body search, he would have acted consistent with his

7  custom and habit and left the determination of whether the devices were necessary to the

8  discretion of the medical staff screening Plaintiff's medical condition.  (Doc. 103-2, Def. UMF

9  No. 42.)  Plaintiff counters that section 3358(b) requires a "department physician" to approve the

10  deprivation of prescribed orthopedic braces.  (Doc. 109, Plntf. DF No. 42.)

11      Defendant asserts that Plaintiff stated he was under a doctor's care only for hypertension

12  and migraines and did not identify any special health care needs or any physical deformity.  (Doc.

13  103-2, Def. UMF Nos. 45, 46.)  Plaintiff counters that Defendant submitted an incomplete bus

14  screening form, and omitted the County of Los Angeles Sheriff's Department Confidential

15  Medical/Mental Transfer Summary, which notified NKSP that Plaintiff had a history of back

16  problems and that he notified the MTA on duty at R&R that the NKSP Security Staff confiscated

17  his prescribed neck and back braces, that he was being treated at the Men's Central Jail for

18  chronic cervical and lumbar spine injuries, hypertension, and prior to his transfer, the medical

19  staff at Men's Central Jail had failed to carry out a Physician's Order for upper GI x-rays

20  following symptoms of vomiting blood and that he was still experiencing symptoms of dizziness

21  and intense headaches from a recent head injury.  (Doc. 109, Plntf. DF Nos. 45, 46.)

22  **VI.    Eighth Amendment – Deliberate Indifference to Serious Medical Need**

23      Plaintiff is proceeding on his claims against Defendant for violating Plaintiff's rights

24  under the Eighth Amendment in deliberate indifference to Plaintiff's serious medical need when

25  Plaintiff was not allowed to use a cart in the R&R of NKSP to help him relocate his property and

26  when Plaintiff's neck/back/spine brace was removed.

27

28

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. *E.g.*, *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

A prison official's failure to provide accommodations for a disabled inmate may constitute deliberate indifference to the inmate's safety in violation of the Eighth Amendment. *Frost*, 152 F.3d at 1129; *see also La Faut v. Smith*, 834 F.2d 389, 393 (4th Cir. 1987) (prison officials ignored the basic needs of a handicapped individual and postponed addressing those needs out of mere convenience or apathy); *Johnson v. Hardin County, Kentucky*, 908 F.2d 1280, 1284 (6th Cir. 1990) (denial of crutches and other accommodations for those who are mobility-impaired); *Casey v. Lewis*, 834 F.Supp. 1569, 1580 ( D. Ariz. 1993) (physical accommodations necessary because of disabilities); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (allegation that officials denied accommodation where a leg brace was required for walking). In *Frost*, *La Faut*, *Bradley*, and *Casey*, the courts characterized the plaintiffs' accommodation claims as a conditions of confinement issue. In *Johnson*, the Court evaluated the plaintiff's accommodation claim as an inadequate medical care issue. In any event, issues of inhumane conditions of confinement, failure to attend to  medical needs, failure to provide for an inmate's safety, or some combination thereof, are appropriately scrutinized under the "deliberate indifference" standard. *See Whitely v. Albers*. 475 U.S. 312,  319 (1986).

A prison official may be held liable if he acted with "deliberate indifference" to a substantial risk of serious harm. *Frost*. Mere negligence is not sufficient to establish liability.

1  *Id. citing Farmer*, 511 U.S. at 835.  Rather, the official's conduct must have been "wanton,"

2  which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official.

3  *Id. citing Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).

4      Where a prisoner's Eighth Amendment claim is based on medical issues, the prisoner

5  must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference

6  to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Such a claim has two

7  elements, "the seriousness of the prisoner's medical need and the nature of the defendant's

8  response to that need."  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1991).  A medical need

9  is serious "if the failure to treat the prisoner's condition could result in further significant injury

10  or the 'unnecessary and wanton infliction of pain.'"  *McGuckin*, 974 F.2d at 1059 (*quoting*

11  *Estelle*, 429 U.S. at 104).  Indications of a serious medical need include "the presence of a

12  medical condition that significantly affects an individual's daily activities."  *Id*. at 1059-60.  By

13  establishing the existence of a serious medical need, a prisoner satisfies the objective requirement

14  for proving an Eighth Amendment violation.  *Farmer*, 511 U.S. at 834.

15      The only evidence presented by either party which addresses the condition of Plaintiff's

16  spine on the date he arrived at NKSP's R&R is a note made on the Los Angeles County Sheriff's

17  Department Confidential Medical/Mental Health Transfer Summary which is extremely difficult

18  to read, but appears to state Plaintiff had an injury to his hand and a history of back aches.  (Doc.

19  111, Plntf. Opp., p. 62.)  This same form is silent as to any medical devices and/or braces that

20  Plaintiff's spine condition might have required when he left the Los Angeles County Jail for

21  NKSP – and in fact a line was drawn through the segment containing space to note any such

22  information.  (*Id.*)  The notation of a history of back aches on one form, without more, does not

23  establish the existence of a serious medical need such that Plaintiff has not satisfied the objective

24  requirement for proving an Eighth Amendment violation under *Farmer*.  However, as discussed

25  in greater detail below, even if one were to assume that the Court's reading of the handwritten

26  note is correct (indicating a history of back aches) and if such singular notation were assumed to

27

28

1  establish a serious medical need, there is no evidence that Defendant was aware that Plaintiff had

2  any such condition and acted deliberately indifferent thereto.

3        If a prisoner establishes the existence of a serious medical need, he must then show that

4  prison officials responded to the serious medical need with deliberate indifference. *Farmer*, 511

5  U.S. at 834.  "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d

6  1051, 1060 (9th Cir.2004).  "Under this standard, the prison official must not only 'be aware of

7  the facts from which the inference could be drawn that a substantial risk of serious harm exists,'

8  but that person 'must also draw the inference.'" *Id.* at 1057 (*quoting Farmer*, 511 U.S. at 837).

9  "'If a prison official should have been aware of the risk, but was not, then the official has not

10  violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (*quoting Gibson v. County*

11  *of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

12        Further, supervisory personnel are generally not liable under section 1983 for the actions

13  of their employees under a theory of *respondeat superior* and, therefore, when a named

14  defendant holds a supervisory position, the causal link between him and the claimed

15  constitutional violation must be specific.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.

16  1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979).

17  To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff

18  must submit evidence that would support a claim that a supervisory defendant either: personally

19  participated in the alleged deprivation of constitutional rights; knew of the violation(s) and failed

20  to act to prevent them; or promulgated or "implemented a policy so deficient that the policy

21  'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional

22  violation.'"  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted);

23  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Under section 1983, liability may not be

24  imposed on supervisory personnel for the actions of their employees under a theory of

25  *respondeat superior*.  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).  "In a §1983

26  suit or a Bivens action - where masters do not answer for the torts of their servants - the term

27

28

1  'supervisory liability' is a misnomer." *Id.* Knowledge and acquiescence of a subordinate's

2  misconduct is insufficient to establish liability; each government official is only liable for his or

3  her own misconduct. *Id.*

4        A.    <u>**Use of Cart**</u>

5        Defendant provided evidence to show that upon arrival at NKSP's R&R, the practice was

6  that the staff assigned to the transport team which delivered the inmates would unload inmate

7  property from the cargo bays at the bottom of the bus and carry the property into R&R. (Doc.

8  103-2, Def. UMF No. 8.)  Inmates were not to carry their property into R&R for security reasons,

9  since the property had not yet been searched by prison staff to ensure it did not contain any

10  weapons or other contraband. (*Id.* UMF No. 9.)  Once the inmates entered the R&R building,

11  their property was searched by the officers. (*Id.* UMF No. 10.)  Inmates would be informed of

12  what property they could keep and what property was not permitted. (*Id.* UMF No. 11.)  Inmates

13  were both limited to a certain amount of property and prohibited from possessing property that

14  posed a security risk. (*Id.* UMF No. 12.)

15        Inmates were not provided with carts to carry their property at R&R for a number of

16  reasons. (*Id.* UMF No. 29.)  The property was to be carried into R&R by the transport team and

17  not by the inmates. (*Id.* UMF No. 30.)  When the inmates left R&R, they were free to ask other

18  inmates for assistance in carrying their property. (*Id.* UMF No. 31.)  The presence of a large

19  number of carts for use by inmates would have presented a safety and security risk to staff and

20  other inmates. (*Id.* UMF No. 32.)  Determinations as to which inmates were provided carts, and

21  competition between inmates for a limited number of carts, could have created conflict and

22  jealousy between inmates. (*Id.* UMF No. 33.)  Carts could also potentially be used as weapons to

23  attack staff or other inmates. (*Id.* UMF No. 34.)

24        As a sergeant, the decision as to whether carts would be present at R&R for the use of

25  inmates in transporting their property was not one that Defendant would have been responsible

26  for making. (*Id.* UMF No. 35.)  For these reasons, when an inmate at R&R made a request of

27

28

Defendant to use a cart to transport his property, as happened on frequent occasions, it was his custom and habit to deny the request. (*Id.* UMF No. 36.) Defendant has no memory of whether Plaintiff may have failed to follow the practice at R&R and, instead, attempted to carry his own property into R&R. (*Id.* UMF No. 39.) Had Plaintiff approached Defendant upon his arrival and requested use of a cart to transport his property, Defendant would have acted consistent with his custom and habit and declined this request since no carts were present at R&R for use by the inmates, the property was to be carried into R&R by the transport team, and because Plaintiff was free to request help from other inmates in moving his property out of R&R. (*Id.* UMF No. 40.) Because Defendant was part of the custody staff and not the medical staff, he did not have access to a prisoner's medical records and would generally be unaware of any medical conditions they may have had. (*Id.* UMF No. 24, 25, Yslava Dec. ¶ 5.)

This evidence shows that Defendant did not have knowledge of any medical condition Plaintiff had which would require use of a cart to move his property out of R&R, that Defendant played no part in the decision that carts would not be made available to inmates moving their property from R&R, and that such decision was made under the legitimate penological purpose of maintaining the safety and security of prison staff and inmates. *Overton v. Bazzetta*, 539 U.S. 126, 133 (2003); *ref e.g., Pell v. Procunier*, 417 U.S. 817, 823 (1974).

The Court finds that, as to the issue of a cart not being provided to Plaintiff to move his personal property, Defendant has met his initial burden of informing the Court of the basis for his motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. *See Matsushita*, 475 U.S. at 586. As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of his contention that the dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank*, 391

1    U.S. at 289; *Strong v. France*, 474 F.2d 747, 749 (9th Cir. 1973).

2           Plaintiff asserts that when he arrived at NKSP and was processed through the R&R, he

3    carried his personal belongings from the transport bus into the R&R facility.  Plaintiff did not

4    submit any evidence to show that inmates were regularly required to carry their belongings from

5    the transport bus into the R&R facility, nor did Plaintiff present any evidence to show that the

6    policy of having prison staff move prisoners' property from the bus into the R&R facility to be

7    searched was in any way unconstitutional.  If Plaintiff did carry his belongings from the transport

8    bus into the R&R facility on January 17, 1998, the evidence presented shows that any such

9    isolated event was not part of the standard procedures and/or protocols.  As such, if it occurred, it

10   was a temporary condition which would not, in and of itself, rise to the level of a constitutional

11   violation.  *See Anderson v. County of Kern* 45 F.3d 1310 (9th Cir. 1995) and *Hoptowit v. Ray*

12   682 F.2d 1237 (9th Cir. 1982).

13          Both parties agree that Plaintiff was required to carry his personal belongings from R&R

14   to his housing facility.  Defendant's evidence (as previously delineated herein) shows that, based

15   on security and safety issues, this was the standard procedure (though Plaintiff could have

16   requested assistance from another inmate) and that Defendant would not have had knowledge of

17   any medical condition Plaintiff presented with which might have required departure from the

18   standard procedure.

19          Plaintiff's evidence shows that he was required to conform to the standard procedure.

20   Plaintiff complains that, because of his neck/back/spine condition, he should not have been

21   required to carry his personal belongings from R&R to his housing facility and that he should

22   have been allowed to use a push cart.  Plaintiff argues that the Confidential Medical/Mental

23   Health Transfer Summary from the Los Angeles Sheriff's Department was sufficient to have

24   alerted Defendant of his neck/back/spine condition such that Defendant should have provided a

25   cart for his use.  However, Plaintiff does not present any evidence to show that this form was in

26   fact brought to Defendant's attention, nor that if Defendant had seen the form, he should have

27

28

know that a note of "Hx of back ache" equated to a serious medical condition such that requiring Plaintiff to carry his own property from R&R to his housing unit (or obtain assistance from another inmate) would have equated to deliberate indifference to Plaintiff's neck/back/spine condition.  Further, if Plaintiff was wearing a neck/back/spine brace at the time of his arrival at R&R (which Defendant disputed in his reply) that does not necessarily equate to knowledge by Defendant that Plaintiff should not have been required to carry his property (or obtain assistance from another inmate to assist him) from R&R to his housing unit.

Defendant has demonstrated the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Plaintiff has failed to establish that a genuine issue as to both the seriousness of his neck/back/spine condition and Defendant's knowledge of his medical condition so as to have acted in deliberate indifference thereto when Plaintiff was not provided with a cart to move his personal property from R&R to his housing unit. *Matsushita*, 475 U.S. at 586.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim against him for violation of his rights under the Eighth Amendment when Plaintiff was not allowed to use a cart to move his personal property from R&R to his housing unit on January 17, 1998.

### B.    Removal of Neck/Back/Spine Braces

Defendant presents evidence that during the receiving process, inmates were also instructed to remove their clothing to undergo an unclothed body search.  (Doc. 103-2, Def. UMF No. 15.)  The practice was that removable medical devices, such as back braces, were removed for the purpose of the unclothed body search.  (*Id.*, UMF No. 16.)  Removal of the devices was essential because they could otherwise be easily used to hide contraband, such as weapons or narcotics.  (*Id.*, UMF No. 17.)  As with other pieces of property, the medical devices would be inspected by the officers to ensure that they did not contain any contraband or pose any security risk.  (*Id.*, UMF No. 18.)  Many medical devices, for example, often contained metal rods that could be turned into weapons.  (*Id.*, UMF No. 19.)  The medical devices were then to be given by the officers to the medical staff person at R&R.  (*Id.*, UMF No. 20.)  The medical staff person,

typically a MTA or RN, was to then make a determination as to whether the device was

medically necessary for the inmate.  (*Id.*, UMF No. 21.)  The medical staff person would screen

each newly arriving inmate, completing what is called a "bus screening form," to assess each

inmate's medical needs.  (*Id.*, UMF No. 22.)  The medical staff person would ask questions of

the inmate to gain information on medical conditions, medications, and medical appliances.  (*Id.*,

UMF No. 23.)  Because Defendant was not a member of the medical staff, he was not involved in

medically screening the new inmates or in determining whether the medical appliances they

arrived with were necessary.  (*Id.*, UMF No. 24.)  Because Defendant was part of the custody

staff and not the medical staff, he did not have access to a prisoner's medical records and would

generally be unaware of any medical conditions they may have had.  (*Id.*, UMF No. 25.)  During

his time as R&R Sergeant, inmates routinely came to Defendant to protest the confiscation of

certain pieces of property.  (*Id.*, UMF No. 26.)  A determination as to the propriety of that

confiscation would be made by Defendant a case-by-case basis.  (*Id.*, UMF No. 27.)  When it was

a medical device which had been confiscated, it was Defendant's custom and habit to leave the

decision of the appropriateness of confiscating the device to the medical staff person at R&R.

(*Id.*, UMF No. 28.)

    This evidence shows that Defendant did not have knowledge of any medical condition

Plaintiff had which would require being allowed to keep his neck/back/spine braces nor did

Defendant have any involvement in the medical assessment of Plaintiff's condition or the

medical decision to take Plaintiff's neck/back/spine braces.

    The Court finds that, as to the issue of Plaintiff's neck/back/spine braces being taken

from Plaintiff at the NKSP R&R, Defendant has met his initial burden of informing the Court of

the basis for his motion, and identifying those portions of the record which demonstrate the

absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff to establish

that a genuine issue as to any material fact actually does exist.  *See Matsushita*, 475 U.S. at 586.

    Plaintiff argues that Defendant violated sections 3358(b) and 3359(b) of Title 15 of the

California Code of Regulations since a MTA or RN conducted the screening of incoming inmates without a "department physician" being involved in the decision whether he should retain his neck/back/spine braces.  (Doc. 109, Plntf. DF Nos. 21, 42.)  The existence of regulations such as these governing the conduct of prison employees does not necessarily entitle Plaintiff to sue civilly to enforce the regulations or to sue for damages based on the violation of the regulations.  The Court has found no authority, and Plaintiff provided none, to support a finding that there is an implied private right of action under Title 15, or that non-compliance rises to the level of a violation of Plaintiff's constitutional rights.

Plaintiff also asserts that the "bus screening form" submitted by Defendant showed that medical staff did not ratify the confiscation of Plaintiff's orthopedic braces by non-medical staff. (Doc. 109, Plntf. DF No. 28.)  However, Plaintiff does not indicate where on the form any such ratification should have been noted and there is no section on the form that specifically addresses whether Plaintiff arrived with any braces or other medical devices.  In fact, the form indicates a negative response to inquiry as to whether Plaintiff had any physical deformity or disability. (Doc. 103-9, Carter Dec Exh. A., p. 3.)

Plaintiff also argues that Defendant submitted an incomplete bus screening form, omitted the County of Los Angeles Sheriff's Department Confidential Medical/Mental Transfer Summary (which he argues notified NKSP that Plaintiff had a history of back problems), and that Plaintiff notified the MTA on duty at R&R that the NKSP security staff confiscated his prescribed neck and back braces, that he was being treated at the Men's Central Jail for chronic spine injuries and hypertension, and that prior to his transfer, the medical staff at Men's Central Jail had failed to carry out a Physician's Order for upper GI x-rays following symptoms of vomiting blood and that he was still experiencing symptoms of dizziness and intense headaches from a recent head injury.  (Doc. 109, Plntf. DF Nos. 45, 46.)

However, Plaintiff did not submit any document that he asserts is a complete copy of the bus screening form, did not indicate what was missing from the bus screening form submitted by

Defendant, and admits that Defendant was not part of the NKSP R&R medical staff. (Doc. 109, Plntf. DF No. 23.) Plaintiff does not submit any evidence to show that Defendant would have been involved in or had access to the process and/or results of Plaintiff's medical screening in the NKSP R&R, or that Defendant had access to the County of Los Angeles Sheriff's Department Confidential Medical/Mental Transfer Summary to have been made aware of Plaintiff's condition so as to have acted deliberately indifferent thereto.

Plaintiff also argues and declares that the security staff did not give his medically prescribed orthopedic braces to medical staff, and that medical staff informed him that his orthopedic brace was not given to them by the officers. (Doc. 109, Plntf. DF No. 20.) However, Plaintiff did not make any showing that these events were caused by Defendant, or that Defendant had any knowledge of such events occurring. Thus, Plaintiff did not show that Defendant had any knowledge that Plaintiff had a serious medical condition which required his neck/back/spine braces, nor does Plaintiff show that Defendant acted with deliberate indifference to Plaintiff's plight. Plaintiff also did not submit any evidence to show that Defendant was personally involved in removing Plaintiff's neck/back/spine braces and/or did not provide Plaintiff's braces to medical staff for their consideration.

Accordingly, Plaintiff has not established that a genuine issue as to any material fact exists such that Defendant's motion for summary judgment should be granted. Since Defendant is entitled to summary judgment on the merits of Plaintiff's claims against him, the issue of whether Defendant is entitled qualified immunity need not be reached.

**VIII.   <u>Conclusion and Recommendation</u>**

Accordingly, this Court finds that Defendant Yslava's motion for summary judgment should be granted in its entirety as he is entitled to summary judgment on Plaintiff's claims for violations of his rights under the Eighth Amendment.

As set forth herein, the Court HEREBY RECOMMENDS:

(1)     Defendant Yslava is entitled to summary judgment on Plaintiff's claims under the

1   Eighth Amendment such that his motion for summary judgment, filed on August

2   11, 2010 (Doc. 103), should be GRANTED;

3   (2)   that the Clerk of the Court be directed to enter judgment for the Defendant Drew

4   and against Plaintiff; and

5   (3)   that the Clerk of the Court be directed to close the case.

6   These Findings and Recommendations will be submitted to the United States District

7   Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

8   **thirty (30) days** after being served with these Findings and Recommendations, the parties may

9   file written objections with the Court.  The document should be captioned "Objections to

10  Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

11  objections within the specified time may waive the right to appeal the District Court's order.

12  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

13

14  IT IS SO ORDERED.

15  **Dated:   November 19, 2010           /s/ Sandra M. Snyder**
                                       UNITED STATES MAGISTRATE JUDGE

19